**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **AMERICAN GUARDIAN HOLDINGS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 23 C 1482** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

American Guardian Holdings Inc. (AGH) has sued the United States to recover what it contends are overpaid income taxes. The government has moved to dismiss for lack of subject matter jurisdiction. It contends that AGH did not file a timely claim for a refund before filing suit and that even if it did, the lawsuit itself was untimely. For the reasons stated below, the Court grants the government's motion to dismiss.

### Background

AGH filed its 2015 income tax return on September 19, 2016 after obtaining an extension. The return reported gross receipts or sales of $152,092,338; total income of $29,923,893; taxable income of $4,880,521; total tax owed of $1,327,806; total payments and refundable credits of $1,114,517; and tax due of $213,289. Compl., Ex. B. AGH says it paid the taxes it reported were due.

AGH alleges that in 2019, after it had paid the 2015 taxes in full, its accountant discovered an error in the tax return. The error led the accountant to conclude that only

$148,243 in tax was owed and that, as a result, AGH had overpaid the IRS by $1,179,563. AGH's accountant prepared an amended tax return dated June 6, 2019 setting this out and claiming a refund in that amount. But, it appears, neither the accountant nor AGH sent the amended return to the IRS at that time. The Court will refer to this as the first amended return.

AGH alleges that in the fall of 2019, it hired a new accountant and then filed an amended return on September 15, 2019. The Court will refer to this as the second amended return. It appears to be undisputed that the second amended return was actually filed; the IRS date-stamped it September 26, 2019. Compl., Ex. C; Mot. to Dismiss, Ex. 2. Though it's not clear from AGH's complaint, an exhibit attached to the government's motion to dismiss makes it clear (and the parties confirmed at oral argument) that the second amended return attached a copy of the earlier, unfiled amended return. *See* Mot. to Dismiss, Ex. 2.

In addition—as confirmed at oral argument—the second amended return was intended to incorporate the first amended return and claim an additional refund over and above the refund sought in the first amended return. To review, the first amended return—which is attached to the second amended return, *see* Mot. to Dismiss., Ex. 2, pp. 4-6—reported, on a Form 1120X, the following figures: originally reported total income of $154,808,792, and a corrected figure of $141,773,572; originally reported taxable income of $11,084,397, and a corrected figure of $7,446,746; and originally reported total tax owed of $1,327,806, and a corrected figure of $148,243. *Id.*, p. 4. (The "originally reported" income and table income figures in the first amended Form 1120X do not actually correspond with the figures reported in the original tax return.) As

2

indicated above, the first amended Form 1120X sought a refund of $1,179,563, the difference between taxes paid of $1,327,806 and claimed taxes owed of $148,243. The explanatory statement attached to the first amended Form 1120X stated that it was filed "to remove the related revenue and expenses for businesses that were reinsured and reported on the individual producer owned reinsurance company tax returns." *Id.*, p. 5.

The second amended Form 1120X used as "originally reported" figures the figures from the first amended return, which the second amended return attached. That's what makes it clear that the second amended return incorporated and built upon the first amended return. The second amended return said that the tax owed was $0. So, in addition to the refund of $1,179,563 claimed by the first amended return, the second amended return sought a *further* refund of $148,243, the amount that the first amended return had reported as owed and paid. *Id.*, p. 1. The second amended return's explanatory page provided brief, but relatively technical explanations for the changes, and it made several references to the "original amended return" and the "amended return"—i.e., the Form 1120X that the Court has referred to as the first amended return. *Id.*, p. 2.

To be clear, the total amount that AGH sought to have refunded via the second amended return was *not* simply $148,243. Rather, it sought $148,243, as set out in the second amended return, *plus* the amount sought in the first amended return, $1,179,563, for a total of $1,327,806. In short, those two amended returns, considered together, sought a refund of the full amount of taxes that AGH had paid to the IRS for the tax year 2015.

The IRS responded by sending AGH a letter, dated October 17, 2019. The letter stated that the IRS could not process AGH's claim dated September 26, 2019—which is the date the IRS had stamped "received" on the second and first amended returns— because "[t]he figures on Form 1120X do not match our records for the tax period ended December 31, 2015." It advised AGH to "[p]lease correct your figures." Compl., Ex. D. The IRS's letter did not provide a specific time frame or deadline for AGH to correct its figures, and it advised that AGH could seek assistance from the Taxpayer Advocate Service (TAS), which the letter described as "an independent organization within the IRS that can help protect your taxpayer rights." *Id.*

AGH alleges that in response to the IRS letter, its accountant prepared and submitted a further amended tax return—which the Court will call the third amended return—on February 4, 2020. The government has attached a copy of the third amended return to its motion to dismiss. Mot. to Dismiss, Ex. 1. The explanatory statement accompanying the third amended return contains twelve numbered statements explaining the changes made from the previously filed second-plus-first amended return, and it says that "[t]he previously-filed amended return for 2015 should be discarded." *Id.*, p. 2. The explanatory statement also says that the third amended return was intended to "allow the taxpayer to report on [a form] 1120-PC instead of [a form] 1120" because the "taxpayer had filed for and received permission to account for transactions under the retail method." *Id.* The third amended return also represented another significant change from the earlier versions: it reported total income of $174,567,582, but total deductions far exceeding this, and thus a *negative* taxable income of ($127,120,882). The third amended Form 1120X sought a refund of the full

4

amount of taxes that AGH had previously paid the IRS for the tax year 2015, that is, $1,327,806.

It bears noting that the refund sought in the third amended return was exactly the same amount as the refund sought in the second-plus-first amended return: $1,327,806.  But the third amended return sought this based on a negative taxable income of more than $127,000,000, which could have implications for future tax years by way of a net operating loss carryforward.  *See* Def.'s Opening Mem. at 6 (noting the claimed net operating loss and the possibility of a carryforward).  AGH's counsel confirmed this point at oral argument.  And the third amended return, as indicated in the previous paragraph, was based on a completely different accounting method than the earlier returns that AGH had submitted for 2015.

On October 1, 2020, the IRS sent AGH a notice of disallowance in which it denied the tax refund claim made by AGH in the third amended return.  Compl., Ex. E. The notice stated that the claim was denied because AGH filed it "more than 3 years after" filing of the 2015 tax return.  *Id.*, p. 1.  The notice also advised AGH of its appeal rights, stating, among other things, that "[t]he law gives you 2 years from the date of this notice of claim disallowance to file suit."  *Id.*, p. 4.

On December 1, 2020, AGH sent a letter to the Taxpayer Advocate Service explaining the basis for its disagreement with the notice of disallowance and asking for assistance.  Compl., Ex. F.  It is not clear from AGH's complaint in the present case exactly what happened next, but on March 11, 2021, the IRS sent AGH another notice of disallowance regarding the amended return it had received on February 18, 2020.  In this notice, the IRS again stated that the "claim was not timely filed."  *Id.*, p. 1.

5

Specifically, the IRS stated that AGH had filed its refund claim "more than 3 years after" it filed its tax return; it stated that "[n]o further action" was "required" by the IRS. *Id.* Like the earlier notice of disallowance, this one advised AGH that "[t]he law gives you 2 years from the date of this notice of claim disallowance to file suit" in U.S. District Court or the U.S. Court of Federal Claims. *Id.*, p. 4.

AGH filed the present lawsuit on March 9, 2023, just under two years after the date of the second notice of disallowance. As indicated earlier, the government has moved to dismiss for lack of subject matter jurisdiction. It argues that both AGH's claim and its lawsuit were untimely.

## Discussion

In this case, the government asserts a "factual" challenge to subject matter jurisdiction, a challenge that "lies where the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks omitted). When considering a factual challenge, a court may consider evidence outside the four corners of the complaint. *Id.* AGH has the burden of establishing subject matter jurisdiction. *See, e.g., Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

A district court lacks jurisdiction over a claim against the federal government unless Congress has waived sovereign immunity. *See, e.g., United States v. Mitchell*, 463 U.S. 206, 212 (1983). Under 28 U.S.C. § 1346(a)(1), a district court has original jurisdiction of an action against the United States for the recovery of "any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ."

6

28 U.S.C. § 1346(a)(1). A provision of the Internal Revenue Code, 28 U.S.C. § 7422(a), says that no such suit may be maintained "until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a). A different provision of the Code sets the time limits for a claim for refund, stating that a "[c]laim for . . . refund . . . of any tax . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed . . . within 2 years from the time the tax was paid." 26 U.S.C. § 6511(a). The Seventh Circuit has held that a timely sufficient claim for refund is a jurisdictional prerequisite to a refund suit. *Kikalos v. United States*, 479 F.3d 522, 525 (7th Cir. 2007) (citing *Martin v. United States*, 833 F.2d 655, 658-59 (7th Cir. 1987)). And the Supreme Court held in 1997 that section 6511's time limits are not subject to equitable tolling. *United States v. Brockamp*, 519 U.S. 347, 352 (1997).

The government argues that AGH did not file a timely, sufficient claim for refund. It contends that AGH's second amended return, though timely, was not sufficient—as the IRS told AGH by way of its October 2019 letter—and that the third amended return was not timely because it was filed in February 2020, more than three years after AGH filed its original return in September 2016. *See* Compl. ¶ 9.

AGH contends that the second amended return, which *was* filed within three years of the date of filing the original return, constituted a timely claim and that the third amended return should be considered to have amended that claim. Thus, AGH contends, the third amended return effectively related back to the second amended

return's timely filing date. "[A]n administrative claim may be clarified or made more specific by a later amendment." *Parker Hannifin Corp. v. United States*, 71 Fed. Cl. 231, 234, 2006 WL 1409627 (Fed. Cl. 2006). The government does not dispute this as a legal proposition. It argues, however, that AGH withdrew or abandoned the timely claim in the second amended return when it filed the third amended return. In this regard, the government relies on AGH's statement in the third amended return asking the IRS to "discard[ ]" the second amended return; a contention (incorrect, as discussed in the Background section) that the third amended return sought a larger refund than the earlier version; and the fact that the third amended return sought a refund on a different basis than the earlier version.

AGH's argument regarding timeliness is a variation on the informal claim doctrine, which "allows an insufficient refund claim to be 'treated as adequate where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period.'" *Kikalos v. United States*, 479 F.3d 522, 526 (7th Cir. 2007) (quoting *United States v. Kales*, 314 U.S. 186, 194 (1941)). The doctrine is an equitable tool used by courts to excuse "harmless noncompliance with the formalities prescribed for refund claims by the treasury regulations." *BCS Fin. Corp. v. United States*, 118 F.3d 522, 524 (7th Cir. 1977). "Courts created the informal claim doctrine to provide equitable relief to taxpayers who made good faith attempts to amend harmless errors in their refund claims even though the statute of limitations would otherwise bar those amendments." *Kikalos*, 479 F.3d at 526-27.

AGH argues that the second amended return constituted a timely claim; the IRS pointed out formal defects ("[t]he figures on Form 1120X do not match our records," *see*

8

Compl., Ex. D) and asked for additional information; and AGH provided this via the third amended return. AGH contends that under *Parker Hannifin*, it was permitted to "clarif[y] or ma[k]e more specific" the earlier claim via the latter one, and it contends that is what it did. Thus, AGH contends, the operative date—the date the claim should be considered to have been filed—is the date it filed the second amended return, which was within three years after the original return was filed and thus timely under section 6511(a).

The first two parts of AGH's argument are quite plainly correct. First, AGH's second amended return constituted a timely-filed claim, even if it had formal defects, specifically, the discrepancies between certain figures on that return and the corresponding figures on the original return. And second, the law is clear that AGH was entitled to clarify the original claim or make it more specific and still get the benefit of the filing date for the original, defective claim. *See Parker Hannifin*, 71 Fed. Cl. at 234. The dispute here is over the third proposition in AGH's argument: its contention that the third amended return should be considered as a correction of the earlier, timely claim and not an entirely new claim.

On this point, AGH relies in part on the statement in the IRS's October 2019 letter asking for more information. According to AGH, it simply followed the IRS's directions, and it should not be penalized for doing so. For its part, the government relies on two points. First, it cites AGH's statement in the third amended return that the previous return—the document that AGH says was the timely claim—should be "discarded." And second, the government says that the third amended return cannot possibly be considered a clarification of the earlier claim or as simply providing more specificity.

Rather, the government says, it was a whole new claim relying on a completely different basis.  (The government also argues that the third amended return claimed a refund in a higher amount than the previous version, but as discussed earlier, that's wrong—both the third amended return and the second-plus-first amended return sought a refund of the full amount of taxes AGH had paid for 2015, specifically $1,327,806.)

Neither side cites any law directly on point.  The government relies on *United States v. Watanabe*, No. 2:12-cv-04868, 2013 WL 12120138, at *1, 2 (C.D. Cal. June 5, 2013), but that case is distinguishable because there the claimant specifically withdrew the earlier claim.  In this case, by contrast, AGH simply told the government to "discard" the earlier return.  Of course it did:  the IRS had said that return was insufficient; AGH had provided a revised version that it considered sufficient; so it did not want the government addressing earlier version.  In the Court's view, if one looks at the "discard" language standing alone, the government is trying to make it bear more weight than it can stand.

The more significant point is the government's second one:  the third amended return cannot properly be considered as part of the same claim as the second amended return because it has an entirely different basis.  The Seventh Circuit's leading cases on the informal claim doctrine, *Martin* and *Kikalos*, are not really on point.  *Martin* mainly involved whether a letter submitted to the IRS in connection with its examination of an estate tax deficiency—a letter claiming a refund—amounted to a timely claim that the taxpayer had later clarified or amended.  The court concluded that it wasn't, largely because the letter did not "explain[ ] the specific basis for the conclusion that the liability shown on the tax return was wrong."  *Martin*, 833 F.2d at 662.  That is not really the

10

issue here: there is, and can be, no dispute that AGH's timely, second-plus-first amended return was an actual claim that *did* explain AGH's basis for claiming its originally reported tax liability was wrong.

*Kikalos* likewise involves a different issue from the one presented here. In that case the taxpayers, after paying the amount sought in an IRS notice of deficiency issued after an examination of their income tax return, filed an amended return reporting a lower tax amount and seeking a refund. But the amended return did not explain the basis for the changes, saying only that "[i]ncome was incorrectly assessed." *Kikalos*, 479 F.3d at 524. The IRS rejected the claim due to the lack of an explanation. The taxpayers then filed a lawsuit, which the district court dismissed, holding they had not submitted a valid refund claim. The taxpayers argued on appeal that the amended return constituted a valid informal claim. The Seventh Circuit disagreed, holding held that the plaintiffs' amended return did not qualify because their failure to provide any information on the grounds for the refund sought "was more than harmless noncompliance," and the amended return "contained no facts sufficient to apprise the Commissioner" of the claim's merits. *Id.* at 526 (internal quotation marks omitted). The informal claim doctrine exists, the court said, "to provide equitable relief to taxpayers who made good faith attempts to amend harmless errors in their refund claims even though the statute of limitations would otherwise bar those amendments." *Id.* at 527. That did not assist the plaintiffs, because they never provided the information the IRS said was missing.

Neither *Martin* nor *Kikalos* addresses the issue involved here, that is, whether a later filing that claims a refund on a completely different basis, can be considered as an

amendment of an earlier claim that had deficiencies. The Court believes that the answer to this question is supplied by a decision by the Supreme Court not cited by either party but cited in *Parker Hannifin*, a case that AGH cited. *Parker Hannifin* itself says that a post-limitations amendment to a properly filed refund claim is permitted "if the amendment is 'germane' to the original claim and was presented before the original claim is resolved." *Parker Hannifin*, 71 Fed. Cl. at 234 (citing *United States v. Andrews*, 302 U.S. 517, 524 (1938)). In *Parker Hannifin*, though the claimant's revision significantly increased the amount of its claimed refund, it relied on the same principles as the original, timely claim. *Id.* Thus it was "germane" to the original claim, a requirement that exists "to prevent surprise and to give adequate notice to the [IRS] of the nature of the claim." *Id.* at 235 (internal quotation marks omitted).

This case presents the opposite scenario from the one in *Parker Hannifin*: AGH's revised claim sought a refund in the same amount as the original claim, but on an entirely different basis—the new accounting method that AGH employed in the third amended return. On this point, the Supreme Court's decision in *Andrews*—cited in *Parker Hannifin*—controls. Although the amended claim in *Andrews* was (unlike here) for a different amount than the original claim, it was also (as in this case) premised on a different basis. The Court focused on the latter point in deciding that the second, untimely, claim could not be considered as an amendment of the first, timely claim: "a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim." *Andrews*, 302 U.S. at 524.

This principle from *Andrews*, in the Court's view, governs here: AGH's third amended claim sought a refund on a basis that was not "germane" to its earlier claim. To put it in the terms of *Parker Hannifin*, the third amended return did not "clarify" the second amended return or "make it more specific." Rather, it completely changed the basis for the refund claim. The Court also notes that the third amended return cannot fairly be considered responsive to the IRS's October 2019 letter, which sought correction (or clarification) of why figures in AGH's second amended return differed from the corresponding figures in its original return. The third amended return did not do that but instead sought a refund based on a completely different accounting method, albeit in the same amount that AGH had previously claimed.

Because the current lawsuit is based on the third amended return, and because the claim in that return was not filed within the three-year period mandated by 26 U.S.C. § 6511(a), that provision's prerequisite of a timely claim for refund was not satisfied. The Court therefore dismisses the case for lack of subject matter jurisdiction and need not reach the question of the timeliness of the lawsuit, which was the alternative basis cited by the government in support of dismissal.

The Court notes that this ruling does not necessarily leave AGH completely high and dry. The second amended return includes a claim for refund that the IRS never actually addressed. AGH's use of the term "discard" in the third amended return, in the Court's view, falls short of an actual withdrawal of that claim. As the Court has indicated, the only case the government cited on that point is inapposite, because in that case the taxpayer formally withdrew the original refund claims. *See Watanabe*, 2013 WL 12120138, at *1, 2. The IRS never actually allowed or denied the claim made

13

by the second-plus-first amended return. Thus it is at least possible that AGH can pursue before the IRS the claim for refund in that amended return even though it may not pursue in court the claim in the third amended return.

## Conclusion

For the reasons stated above, the Court grants the defendant's motion to dismiss [21] and directs the Clerk to enter judgment stating as follows: The case is dismissed for lack of subject matter jurisdiction.

Date: February 7, 2024

MATTHEW F. KENNELLY
United States District Judge