**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **AMERICAN GUARDIAN HOLDINGS, INC.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 23 C 1482** |
| **UNITED STATES OF AMERICA,** | ) ) | |
| **Defendant.** | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

American Guardian Holdings Inc. (AGH) has sued the United States to recover

what it contends are overpaid income taxes. The government has moved for summary

judgment. For the reasons stated below, the Court construes the motion as a challenge

to its subject matter jurisdiction and dismisses the case.

**Background**

AGH filed its 2015 income tax return in September 2016. The original return

stated that it was a consolidated return, meaning that it was filed on behalf of a

consolidated group of subsidiary corporations. Because it was a consolidated return,

the original return included consolidated financial statements that contained detailed

financial information for each subsidiary. The original return also included a Form 851,

*Affiliations Schedule*, and Schedule M-3, *Net Income (Loss) Reconciliation for*

*Corporations with Total Assets of $10 million or more*. The Form 851 and Schedule M-3

listed American Guardian Warranty Services (AGWS) as the common parent

corporation for the consolidated return.  The original return reported consolidated gross receipts or sales of $152,092,338; consolidated costs of goods sold (COGS) of $124,884,889, and consolidated gross profit of $27,207,439; taxable income of $4,880,521; total tax owed of $1,327,806; total payments and refundable credits of $1,114,517; and tax due of $213,289.

In June 2019, AGH's accountant prepared an amended 2015 federal income tax return.  The Court will refer to this as the first amended return.  The stated reason for the first amended return was that it was "filed to remove the related revenue and expenses for businesses that were reinsured and reported on the individual producer owned reinsurance company tax returns."  Def.'s Ex. 8.  Unlike the original return, the first amended return stated that it was a "non-consolidated return." *Id.* at 13.  The first amended return claimed that AGH overpaid its income tax for 2015 by $1,179,563 and asked for this amount to be refunded.  *Id.*  The first amended return was not actually submitted to the IRS at that time.  In addition, it was not signed by any AGH officer.  *Id.* at 1.

The first amended return was ultimately attached to another amended return that AGH submitted to the IRS in September 2019.  The Court will refer to this as the second amended return.  The second amended Form 1120-X[1] relied on figures from the first amended return even though the first amended return was filed for the first time as an attachment to the second amended Form 1120-X.  Def.'s Ex. 9.  The second amended return also stated that it was a "non-consolidated return."  *Id.* at 13.  Relevant here, the

---

[1] The initial form used by C-Corporations to file their income is a Form 1120.  Form 1120-X is used to correct a Form 1120.  IRS, Instructions for Form 1120-X (December 2025).

explanation of changes stated: "Line 1, eliminated inter-company revenue—same income was recognized on two of the subsidiaries (18,984,792)." *Id.* at 2. The result of this intercompany revenue offset was, according to AGH, a $18,984,792 downward adjustment in its 2015 income. The second amended return did not include any amendment to the originally filed consolidated financial statements or additional detail about the income of the two referenced but unidentified subsidiaries. AGH now asserts that this adjustment was based on an alleged $30,404,867 in accounts receivable attributed to AmGuard and an alleged $11,420,075 in accounts payable attributed to AGWS. The second amended return claimed that AGH had overpaid its taxes by another $148,243 in addition to the $1,179,563 claimed on the first amended return. Based on the first and second amended returns, AGH claimed a refund of $1,327,806.

The IRS responded to AGH's submission by sending AGH a letter, dated October 17, 2019. The letter stated that the IRS could not process AGH's claim dated September 26, 2019—which is the date the IRS had stamped "received" on the first and second amended returns—because "[t]he figures on Form 1120X do not match our records for the tax period ended December 31, 2015." Def.'s Ex. 13. It advised AGH to "[p]lease correct your figures." *Id.* The IRS's letter did not provide a specific time frame or deadline for AGH to correct its figures, and it advised that AGH could seek assistance from the Taxpayer Advocate Service (TAS), which the letter described as "an independent organization within the IRS that can help protect your taxpayer rights." *Id.*

Rather than correcting the second amended return, AGH submitted another amended tax return—which the Court will call the third amended return—on February 4,

2020.  The third amended return recomputed AGH's 2015 income tax liability on a different basis and represented that it was a consolidated return.  Def.'s Ex. 14.  The third amended return also included updated financial statements the provided detailed financial information for the relevant subsidiaries.  *Id.*  The third amended Form 1120-X also sought a refund of the full amount of taxes that AGH had previously paid the IRS for the tax year 2015, that is, $1,327,806.  *Id.*  On October 1, 2020, the IRS sent AGH a notice of disallowance in which it denied the tax refund claim made by AGH in the third amended return because it was not timely filed.

AGH filed the present lawsuit on March 9, 2023.  The government moved to dismiss AGH's claim because it was based on the third amended return and thus, the government argued, was untimely filed.  The Court concluded that the third amended return could "not properly be considered as part of the same claim as the second amended return because it has an entirely different basis."  *See Am. Guardian Holdings, Inc. v. United States*, No. 23 C 1482, 2024 WL 474165, at *5 (N.D. Ill. Feb. 7, 2024).  Based on this conclusion, the Court held that the third amended return was not filed within the three-year period mandated by 26 U.S.C. § 6511(a) and was untimely.  *Id.*  In that decision, the Court noted that the IRS never actually allowed or denied the claim in the second amended return such that AGH may be able to seek relief based on that return.  *Id.*

On April 9, 2024, the Court granted AGH's motion to alter or amend the judgment to allow AGH to file an amended complaint asserting a claim for a refund based on the first and second amended returns.  AGH filed its amended complaint on May 9, 2024.

The Court later denied the government's motion to dismiss the amended complaint.
The government has now moved for summary judgment.

## Discussion

The government argues that summary judgment is appropriate for three reasons:
(1) the alleged overpayment hinges on an $18,984,792 downward income adjustment
claimed on AGH's second amended return that should be disallowed; (2) the
$56,736,904 in costs of goods sold that AGH claimed based on a change in accounting
method should be rejected; and (3) the "second-plus-first" amended return does not
give rise to a valid refund claim. The government challenges the Court's subject matter
jurisdiction through its argument that the "second-plus-first" amended return does not
give rise to a valid refund claim. Def.'s Mem. of L. at 7 ("On the undisputed record here,
AGH's refund claim fails for both jurisdictional and merits-based reasons").

### A.      Rule 12(b)(1)

To challenge jurisdiction, a motion should be brought under Federal Rule of Civil
Procedure 12(b)(1), not Rule 56. *Chicago Joe's Tea Room, LLC v. Village of
Broadview*, 894 F.3d 807, 814 (7th Cir. 2018). "The distinction matters because the *res
judicata* effect of a dismissal for lack of jurisdiction is limited to the jurisdictional issue."
*Id*. Still, subject matter jurisdiction may be challenged at any stage of the proceedings.
*Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008). And district courts have an
independent duty to ensure that subject matter jurisdiction exists. *See Page v.
Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021) ("[F]ederal courts, as courts of
limited jurisdiction, must make their own inquiry to ensure that all statutory requirements
are met before exercising jurisdiction."); *see also* Fed. R. Civ. P. 12(h)(3)  ("If the court

determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").  For these reasons, the Court construes the government's argument challenging the Court's subject matter jurisdiction as a motion under Rule 12(b)(1).

"In ruling on a motion under Rule 12(b)(1), the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).  But the district court may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

**B.    Jurisdiction**

"Under section 7422 of the Internal Revenue Code, a taxpayer seeking a refund first must file a valid claim with the Secretary of the Treasury before it is entitled to bring an action in the district court." *Nick's Cigarette City, Inc. v. United States*, 531 F.3d 516, 520 (7th Cir. 2008).  "The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof."  26 C.F.R. § 301.6402-2.  "A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit." *Id.*  In other words, the Court lacks subject matter jurisdiction over a tax refund claim that was not "duly filed" in accordance with IRS regulations. *Goldberger v. United States*, 150 Fed. Cl. 284, 288 (2020).

To be considered "duly filed," an amended return must be "properly executed." *Gillespie v. United States*, 670 F. App'x 393, 395 (7th Cir. 2016); *Goldberger*, 150 Fed.

Cl. at 288; 26 C.F.R. § 301.6402-3.  IRS regulations require a Form 1120-X to be "filed in a manner consistent with such form, form instructions, publications, or other guidance found on the IRS.gov website."  26 C.F.R. § 301.6402–2(a)(2).  The IRS.gov website requires a Form 1120-X to include, at a minimum, "all forms, schedules and attachments that changed or that support changes on the amended Form 1120 . . . "including any subsidiary returns (if changed) and the information to support those changes."  IRS.gov, Amended and Superseding Corporate Returns (2026).  The Form 1120-X instructions state, "[i]f the corrected amount involves an item of income, deduction or credit that must be supported with a schedule, statement, or form, attach the appropriate schedule, statement, or form to Form 1120-X . . . ."  IRS, Instructions for Form 1120-X (December 2025).  The instructions also state that the filer should consult the "instructions for the appliable Form 1120 for the tax year of the claim for a list of forms that may be required."  *Id.*  An amended return, to be valid, must also be signed by the taxpayer.  26 U.S.C. §§ 6061, 6065.

The government argues that the "second-plus-first" amended return was not "properly executed" because it was "replete with errors."  Def.'s Mem. of L. at 16.  The government presents two primary arguments on the validity of the first and second amended returns.  First, the government argues that AGH's filings violated the consolidated return regulations and did not include required information.[2]  Second, the

---

[2] The Court recognizes that the government presented this point within its argument about the merits of the downward income adjustment.  But AGH's lack of compliance with IRS regulations goes to the question of whether the return was "properly executed."  The Court thus addresses this point when addressing whether the first and second amended returns were "properly executed" as required to provide this Court subject matter jurisdiction over AGH's claim.

government argues that the first amended return is not valid because it was not signed by an officer of AGH or AGWS. The Court agrees with the government that, based on these errors, the first and second amended returns were not "properly executed" and thus the Court lacks subject matter jurisdiction over AGH's claim in this case.

AGH filed a consolidated return for tax year 2015 and listed AGWS as the corporate parent.[3] Def.'s Ex. 3. The Internal Revenue Code provides affiliated groups of corporations the "privilege" of electing to file a combined federal income tax return. 26 U.S.C. § 1501. "The principal advantage in filing a consolidated return is income blending: the losses of unprofitable group members can offset the income of profitable group members and mitigate the current tax liability." *Amtel, Inc. v. United States*, 31 Fed. Cl. 598, 600 (1994). "Congress delegated broad authority to the Commissioner of the IRS to establish rules for filing consolidated returns." *Id.; see also* 26 U.S.C. § 1502. The group's parent corporation files the return, pays the tax, receives any refunds, and generally deals with the IRS. *See* 26 C.F.R. § 1.1502–77(a), (c) & (d). No subsidiary "has the authority to act for or to represent itself in any matter related to the tax liability for the consolidated return year" except for limited matters reserved exclusively to the subsidiary. 26 C.F.R. § 1.1502-77(e).

AGH's first and second amended returns failed to include information required for an amended, consolidated return. AGH's original return included consolidated financial statements that set forth the income and deductions associated with each subsidiary. Def.'s Ex. 3 at 49; 26 C.F.R. § 1.1502-75(j) ("The statement of gross income and

---

[3] As discussed later, AGH and the government now dispute whether AGH or AGWS is the corporate parent.

deductions and the schedules required by the instructions on the return shall be prepared and filed in columnar form so that the details of the items of gross income, deductions, and credits for each member may be readily audited.").  But the only support in the first or second amended returns for the $18,984,792 downward income adjustment is a line in the second amended return that stated:  "Line 1, eliminated inter-company revenue – same income was recognized on two of the subsidiaries."  Def.'s Ex. 9 at 2.  The first and second amended returns failed to include any financial statement to show how this asserted change in income was attributable to the unnamed subsidiaries.  IRS regulations required AGH to include this additional information with any amended return.

Furthermore, the first amended return was not a valid claim because it was not signed by any officer of AGH.  The Seventh Circuit has stated that "[a] document purporting to be a return that does not contain a verified signature of the taxpayer does not constitute a return under the Internal Revenue Code."  *Buelow v. Comm'r,* 970 F.2d 412, 416 (7th Cir. 1992); *see also* 26 U.S.C. § 6062.  Because the first amended return was never signed by an officer of AGH, it cannot be considered a valid return.  The first and second amended returns must be analyzed together to address AGH's refund claim.  And the second amended return improperly relied on the information included in an invalid return.

AGH essentially evokes the substantial compliance doctrine in response.  The Supreme Court has noted that tax returns may be imperfect and contain mistakes.  *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453, 459 (1930). The Tax Court clarified the elements of the substantial compliance test from *Florsheim*:  (1) the

taxpayer must "execute the return under penalties of perjury", (2) "the return must have sufficient data to calculate tax liability", (3) "the document must purport to be a return", and (4) "there must be an honest and reasonable attempt to satisfy the requirements of the tax law." *Reifler v. Comm'r*, T.C.M. (RIA) 2015-199 (citing *Beard v. Comm'r*, 82 T.C. 766, 777 (1984)).

The Court concludes that the errors discussed above are fundamental and do not reflect substantial compliance with the tax law and regulations. As discussed, the first and second amended returns failed to include updated schedules correcting the financial data that was required to support the downward income adjustment that AGH claimed. *Hefti v. IRS*, 8 F.3d 1169, 1174 (7th Cir. 1993) (explaining that it is the taxpayer's burden to provide the IRS documentation sufficient to support the refund claimed). The returns did not even include the names of the relevant subsidiaries or the individual changes in income attributable to them. Thus the first and second amended return did not include sufficient data to calculate tax liability.

AGH argues that the financial data included on the original return is "immaterial" "because this case is based on the fact that numbers in the [o]riginal [r]eturn were incorrect and it contained 'accounting errors.'" Pl.'s Resp. at 10 (quoting Def.'s Mem. of L. at 12). But this is exactly why AGH was required to include updated consolidated financial statements with the amended returns. The updated financial data should have corrected the incorrect numbers and accounting errors from the original return. Without this updated financial information, the first and second amended returns did not include the underlying information required to support AGH's claimed $18,984,792 downward adjustment of its 2015 income.

10

AGH also argues that any failure to execute the first amended return is "immaterial" given that it was filed with the second amended return and was signed by the tax preparer. *Id.* at 12. Although the first amended return was filed at the same time as the second amended return, the AGH officer's signature on the second amended return did not attest that the statements in the first amended return were true, correct, and complete. And it is insufficient for a return to be signed by the tax preparer but not the taxpayer. *Buelow,* 970 F.2d at 416. Thus the first amended return, on which the second amended return was based, is not valid because it was not executed under penalty of perjury by any officer of AGH.

AGH and the government also dispute whether AGH or AGWS is the common parent and thus the entity that had to file any consolidated return. But the original return represented that AGWS was the corporate parent. Def.'s Ex. 3 at 1, 11–14, 16–18, 20–40, 42. The first and second amended returns were filed by AGH but were filed as "non-consolidated" returns and thus did not include a corporate parent.[4] Def.'s Ex. 8 at 3, 13; Def.'s Ex. 9 at 3, 13. AGH now asserts that *it* is the corporate parent. At a minimum, this represents another error on the original or amended returns. If the amended returns were filed only on AGH's behalf, the returns violated the consolidated return rules because—according to the information the IRS had at that time—AGWS was the only party authorized to interact with the IRS for purposes of amending the

---

[4] AGH ignores that it did not simply "miss" a check box that would have identified the returns as consolidated returns. There is one checkbox for "consolidated" return that is not checked on the first and second amended returns. Def.'s Exs. 8, 9 at 3. Then, when asked to select whether the return was a "non-consolidated" or "consolidated return," the first and second amended returns affirmatively selected that they are "non-consolidated" returns. Def.'s Exs. 8, 9 at 13.

consolidated return.  A subsidiary is not permitted to file an individual amendment to the consolidated return.  If the amended returns were consolidated returns, the returns presented the IRS conflicting information on which entity was the parent corporation— AGH or AGWS.  Either way, the returns did not provide the IRS with the information it needed to determine the appliable tax liability.  And the IRS is not required to piece together the information provided at different times to attempt to discern AGH's tax liability.[5]  *See Kiselis v. United States*, 131 Fed. Cl. 54, 61 (2017) ("that the IRS may have been able to piece together what Plaintiff should have reported . . . does not render Plaintiff's tax return valid").

To recap, the first and second amended returns violated the IRS's consolidated return regulations, neither return provided the required financial information to support the asserted change in income, and the first amended return was not signed by the taxpayer under penalty of perjury.  Thus the first and second amended returns were not "properly executed" and therefore were not "duly filed" with the IRS.[6]  The Court thus lacks subject matter jurisdiction over AGH's claim for a refund.

## Conclusion

For the reasons stated above, the Court grants the defendant's motion to dismiss under Rule 12(b)(1) [dkt. no. 76] and directs the Clerk to enter judgment stating as

---

[5] The government is also correct that there is no authority that permits a taxpayer to amend a tax return by filing one amended return attached to another.

[6] It was also within the IRS's discretion to reject the first and second amended returns. *Dover Corp. & Subsidiaries v. Comm'r*, 148 F.3d 70 (2d Cir. 1998) ("there is nothing in either the Internal Revenue Code or the regulations thereunder that requires the IRS 'to accept the amended tax return in place of the original return previously filed.'") (quoting *Koch v. Alexander*, 561 F.2d 1115, 1117 (4th Cir.1977)).  The IRS informed AGH that it was not accepting these returns by letter in 2019.  Def.'s Ex. 13.

follows:  The case is dismissed for lack of subject matter jurisdiction.

Date:  February  11, 2026

_____
MATTHEW F. KENNELLY
United States District Judge